UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————————

VLADIMIR ZUK, a/k/a Walter Zuk,

                 Plaintiff,

v.                                            5:09-CV-0272
                                            (GTS/GJD)

ONONDAGA COUNTY; and KEVIN E. WALSH,
Sheriff, Onondaga County, in his Official Capacity,

                 Defendants.
————————————————————————————————

APPEARANCES:                           OF COUNSEL:

VLADIMIR ZUK
  Plaintiff, *Pro Se*
P.O. Box 65
Camillus, NY 13031

HON. GORDON J. CUFFY                  KAREN A. BLESKOSKI, ESQ.
Onondaga County Attorney            Deputy County Attorney
  Counsel for Defendants
421 Montgomery Street
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM -DECISION and ORDER</u>

      Currently before the Court, in this *pro se* civil rights action, filed by Vladimir Zuk

("Plaintiff") against Onondaga County and Onondaga County Sheriff Kevin E. Walsh in his

official capacity ("Defendants"), is Defendants' motion for summary judgment.  (Dkt. No. 17)

For the reasons set forth below, Defendants' motion is granted, and Plaintiff's Compliant is

dismissed with prejudice.

**TABLE OF CONTENTS**

I.     RELEVANT BACKGROUND.................................................................................3

       A.     Plaintiff's Claims..............................................................................3

       B.     Defendants' Motion for Summary Judgment...............................................4

II.    LEGAL STANDARD GOVERNING MOTION FOR SUMMARY JUDGMENT.........6

III.   UNDISPUTED MATERIAL FACTS......................................................................9

       A.     Overview of OCSO Policies and Procedures...........................................10

              1.     Promotions of OCSO Employees..............................................10

              2.     Policies Regarding Age Discrimination.......................................12

       B.     Plaintiff's Employment at OCSO........................................................12

       C.     Plaintiff's Lack of Promotion...........................................................12

       D.     Plaintiff's Grievances....................................................................14

IV.    ANALYSIS.................................................................................................14

       A.     Plaintiff's Age Discrimination Claims Against Defendant Walsh......................18

       B.     Plaintiff's Age Discrimination Claims Against Onondaga County.....................18

              1.     Plaintiff's Age Discrimination Claim Under the ADEA..........................18

              2.     Plaintiff's Age Discrimination Claim Under N.Y. Exec. Law § 290........22

       C.     Plaintiff's Claim Under 42 U.S.C. § 1983.............................................22

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, construed with the utmost of special leniency, Plaintiff alleges in his

Complaint that, while he was working as a deputy in the Onondaga County Sheriff's Office

("OCSO") Custody Department in 2008, Defendants discriminated against him on the basis of

his age under 29 U.S.C. §§ 621-634(b), 42 U.S.C. § 1983, and N.Y. Exec. Law § 290, by

denying him promotions to the position of "Deputy Sheriff Sergeant-Custody" on June 2, 2008,

and August 23, 2008 (instead promoting other individuals on those dates).  (Dkt. No. 1.)

Plaintiff further alleges that, during all times relevant to his claims, he was a member of a

protected class as prescribed by 29 U.S.C. § 631(a) because he "was over 45 years of age."  (*Id*.)

Finally, Plaintiff alleges that he "is older than every newly appointed Sergeant-Custody[, and is]

. . . as well, if not more qualified than the candidates that were selected."  (*Id*.)

Based on these (and other) factual allegations, Plaintiff's Complaint asserts the following

five causes of action against Defendants: (1) a claim that Defendant Walsh violated his rights

under the Age Discrimination Employment Act of 1967 ("ADEA") based on Defendant Walsh's

refusal to promote him on June 2, 2008, and August 23, 2008; (2) a claim that Defendant Walsh

violated his constitutional rights under 42 U.S.C. § 1983 based on Defendant Walsh's refusal to

promote him on June 2, 2008, and August 23, 2008; (3) a claim that Defendant Walsh violated

his rights under N.Y. Exec. Law § 290 based on Defendant Walsh's refusal to promote him on

June 2, 2008, and August 23, 2008; (4) a claim that Defendant Onondaga County violated his

rights under the ADEA based on the refusal to promote him on June 2, 2008, and August 23,

2008; and (5) a claim that Defendant Onondaga County violated his rights under N.Y. Exec. Law

3

§ 290 based on the refusal to promote him on June 2, 2008, and August 23, 2008. (*Id.*) Familiarity with the particular factual allegations supporting these claims is assumed in this Decision and Order, which is intended primarily for the review of the parties.

Before proceeding to an analysis of Defendants' motion for summary judgment, the Court finds it worth noting that Plaintiff previously filed a *pro se* civil rights action against, *inter alia*, Onondaga County and Onondaga County Sheriff Kevin E. Walsh in his official capacity, arising from, *inter alia*, the repeated denial of his promotion to the position of Deputy Sheriff Sergeant between 2003 and 2007, which action was dismissed with prejudice by the Court on September 30, 2010. *Zuk v. Gonzalez*, 07-CV-0732, 2009 WL 3909524 (N.D.N.Y. Sept. 30, 2010) (Suddaby, J.).

## B.   Defendants' Motion for Summary Judgment

On August 5, 2010, Defendants filed a motion for summary judgment in this action. (Dkt. No. 17.) Generally, in support of their motion, Defendants assert the following five arguments: (1) Plaintiff's claims against Defendant Walsh in his official capacity should be dismissed because the claims are duplicative of Plaintiff's claims against the County; (2) Plaintiff's claims under the ADEA based on his not being promoted on August 23, 2008, should be dismissed because Plaintiff's EEOC complaint did not mention that incident; (3) to the extent the Court construes Plaintiff's interrogatories as amending Plaintiff's Complaint to assert a claim of harassment and/or hostile work environment, the claims should be dismissed because (a) Plaintiff failed to allege either a hostile work environment or harassment in his EEOC complaint, and (b) Plaintiff has failed to adduce admissible record evidence establishing a hostile work environment and/or harassment, let alone a specific basis to hold the County liable for the conduct that created the environment; (4) Plaintiff's age discrimination claims under the ADEA

4

and New York State law should be dismissed because he has failed to establish a prima facie case of age discrimination, and the admissible record evidence establishes that Plaintiff was passed over for promotion due to non-discriminatory reasons; and (5) Plaintiff's Section 1983 claims should be dismissed because (a) his constitutional claims are duplicative of his ADEA claim, and the ADEA is the proper vehicle to assert claims based on age discrimination, (b) Plaintiff has failed to adduce admissible record evidence establishing a violation of his constitutional rights, and (c) Plaintiff has failed to establish the existence of a municipal custom or policy promulgated by the County that is casually connected to the constitutional deprivation allegedly suffered by Plaintiff.  (Dkt. No. 17, Attach. 54.)

On September  21, 2010, Plaintiff filed a response to Defendants' motion for summary judgment.  (Dkt. No.18.)  Generally, in that response, Plaintiff does two things.  First, he acknowledges that (1) he is not entitled to punitive damages, (2) his ADEA claims are limited by the statute of limitations to those promotions held on February 9, 2008, June 2, 2008, and August 23, 2008, and (3) his New York State law claims are limited to claims regarding the incidents of June 2, 2008, and August 23, 2008 (because those were the only incidents regarding which Plaintiff filed the appropriate Notices of Claim).  (*Id.*)

Second, Plaintiff provides a series of captions regarding his other claims.  (*Id.*)  For example, Plaintiff captions "Point II" as "Official Capacity Suit Should Not Be Dismissed." (*Id.*)  Similarly, he captions "Point III" as "Plaintiff Has Not Failed To Exhaust Administrative Remedies."  (*Id.*)  However, Plaintiff does not provide any analysis under any of his captions. (*Id.*)  Instead, Plaintiff provides citations to a series of cases, which are sometimes relevant, and sometimes not relevant, to the captioned "Point."  (*Id.*)

On September 24, 2010, Defendants filed their reply.  (Dkt. No. 19.)  Generally, in their reply, in addition to reiterating previously advanced arguments, Defendants argue that they are entitled to summary judgment because (1) Plaintiff's response does not comply with Local Rule 7.1 of the Local Rules of Practice for this Court, and (2) Plaintiff's response does not contain any record citations in support of his allegations, but rather relies on, among other things, "bald assertions" and "inadmissible hearsay."  (*Id.*)

## II.   LEGAL STANDARD GOVERNING MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted].  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* [citation omitted].

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c),(e).  However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial.  Fed. R. Civ. P. 56(c),(e).

What this burden-shifting standard means when a plaintiff has failed to respond to a defendant's motion for summary judgment is that "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  However, the plaintiff's failure to respond to the defendant's motion for summary judgment lightens the defendant's burden on the motion.

More specifically, where a plaintiff has failed to properly respond to a defendant's factual assertions contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the factual assertions contained in that Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.  *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); N.D.N.Y. L.R. 7.1(a)(3); N.D.N.Y. L.R. 56.2.

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[1]  Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are *facially meritorious*.[2]  A defendant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest."[3]

---

[1]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[2]      *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) [citations omitted]; *accord, Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[3]      *Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) [citation omitted]; *accord, Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[4]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[5]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[6]  For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has willfully failed to properly respond to that statement[7]–even where the nonmoving party was proceeding *pro se* in a civil rights case.[8]

## III.   UNDISPUTED MATERIAL FACTS

The following facts were asserted by Defendants, supported by accurate citations to admissible record evidence, and admitted by Plaintiff either expressly or implicitly (through his failure to support a denial of those facts with accurate citations to admissible record evidence).

---

[4]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[5]      *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[6]      *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

[7]      Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[8]      *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

(*Compare* Dkt. No. 17, Attach. 8 *with* Dkt. No. 18, Attach 1.)[9]

### A.      Overview of OCSO Policies and Procedures

OCSO employees are required to follow the policies and procedures governing employee

conduct, including, but not limited to, those set forth in the Onondaga County Employee

Handbook and the OCSO Duty Manual.  (*See generally* Dkt. No. 17, Attach. 8 at ¶¶ 1-8.)

These policies and procedures address a variety of work-related issues, including promotions,

disciplinary measures and procedures, and prohibited conduct such as discrimination, harassment

and retaliation.  (*Id.*)  Furthermore, the OCSO often issues written directives regarding, among

other things, promotions, the submission of time sheets, the documentation of employee

performance, harassment and retaliation, and disciplinary procedures.  (*Id.*)

### 1.      Promotions of OCSO Employees

Promotions of OCSO Custody Department deputies are governed by a multi-phased

process.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 9 *with* Dkt. No. 18, Attach 1 at ¶ 9.)  First, to

become eligible for promotion, candidates must pass the relevant civil service examination

---

[9]      The Court notes that, before submitting his Rule 7.1 Response on September 21, 2010, Plaintiff was *specifically* notified of the consequences for failing to support any denials of fact in a Rule 7.1 Response with accurate citations to admissible record evidence at least *three* times: (1) on or about March 6, 2009, when he received a written notice from the Clerk's Office, page 2 of which provides that specific notice (Dkt. No. 5, at 2); (2) on or about March 6, 2009, when he received a courtesy copy of the Court's Local Rules of Practice, Rule 7.1(a)(3) of which provides that specific notice (Dkt. No. 5, at 3); and (3) on or about May 11, 2009, when Plaintiff received a reply memorandum of law on a summary judgment motion in the related action of *Zuk v. Gonzalez*, 07-CV-0732 (N.D.N.Y.), page 3 of which contained that specific notice.  In addition, Plaintiff was generally notified of his duty to submit an adequate Rule 7.1 Response at least *four* other times: (1) on or about March 6, 2009, when he received a courtesy copy of the District's *Pro Se* Handbook, page 42 of which contains that general notice (Dkt. No. 5, at 3); (2) on or about August 5, 2010, when he received Defendants' Notice of Motion, page 3 of which contains that general notice (Dkt. No. 17, at 3); (3) on or about July 13, 2007, when he received a courtesy copy of the aforementioned *Pro Se* Handbook in the related action of *Zuk v. Gonzalez*, 07-CV-0732 (N.D.N.Y.); and (4) on or about March 30, 2009, when he received an identical copy of the aforementioned Notice of Motion in the related action of *Zuk v. Gonzalez*, 07-CV-0732 (N.D.N.Y.).

administered pursuant to New York State Civil Service Law.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 10 *with* Dkt. No. 18, Attach. 1 at ¶ 10.)  A list of the candidates eligible is then compiled according to their respective scores on the examination.  (*Id.*)  Candidates from the eligible list scoring higher than, or equal to, the third highest score on the examination may be considered for promotion.  (Dkt. No. 17, Attach. 2 at ¶ 4.)  *See also* N.Y. CIV. SERV. § 61(1).

In choosing among those that satisfy the threshold qualifications, a panel of OCSO supervisors ("promotion panel") convenes and conducts interviews.  (*Compare* Dkt. No. 17, Attach. 8, at ¶ 12 *with* Dkt. No. 18, Attach. 1 at ¶ 12.)  Being on the list of candidates eligible for promotion is not a guarantee that a candidate will be promoted.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 14 *with* Dkt. No. 18, Attach. 1 at ¶ 14.)[10]  The promotion panel reviews and considers a candidate's disciplinary history, personnel file, and supervisor's memorandum file.  (*Compare* Dkt. No. 17, Attach. 8, at ¶¶ 18-24 *with* Dkt. No. 18, Attach. 1 at ¶¶ 18-24.)

After completing the interview, each promotion panel member scores the candidates.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 27 *with* Dkt. No. 18, Attach. 1 at ¶ 27.)  Those individual scores are then tallied, and each candidate is ranked accordingly.  (*Id.*)  The list ranking each candidate, along with the recommendations of the promotion panel, are then submitted to Defendant Walsh, who ultimately decides which candidate will be promoted.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 28 *with* Dkt. No. 18, Attach. 1 at ¶ 28.)  Those candidates not selected for promotion are given the opportunity to speak with a promotion panel member about ways to improve.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 30 *with* Dkt. No. 18, Attach. 1 at ¶ 30.)

---

[10]  *See also Hatala v. McCaul*, 677 N.Y.S.2d 564, 565 (N.Y. App. Div., 1st Dept. 1998) (noting that the use of interviews to determine which eligible candidate would be promoted was well within the authorization of Civil Service Law).

### 2.       Policies Regarding Age Discrimination

Age discrimination is prohibited by OCSO policy.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 1 *with* Dkt. No. 18, Attach. 1 at ¶ 1.)  The OCSO maintains internal procedures for aggrieved parties to seek redress for such discrimination.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 4 *with* Dkt. No. 18, Attach. 1 at ¶ 4.)  The internal complaint procedure does not, however, interfere with an aggrieved employee's right to file complaints with the EEOC.  (Dkt. No. 17, Attach. 9. at 10.)

### B.       Plaintiff's Employment at OCSO

Plaintiff, who was born in February 1959, has been employed as a deputy sheriff since February 1997.  (*Compare* Dkt.  No. 17, Attach. 8, ¶ 37 *with* Dkt. No. 18, Attach. 1, at ¶ 37.) Plaintiff has been eligible for promotion, yet has been passed over, on a total of fifteen times between February 26, 2005, and August 23, 2008.  (*Compare* Dkt. No.18, Attach. 1, at ¶¶ 41-71 *with* Dkt. No. 17, Attach. 8, at ¶¶ 41-71.)  All of the individuals promoted during this time period have been younger than him.  (*Id*.)  The gap in age between Plaintiff and those promoted ranges from one to nineteen years, with eleven of the fifteen individuals promoted being within ten years of Plaintiff's age.  (*Id*.)

### C.       Plaintiff's Interviews

On June 15, 2007, Plaintiff was selected from an eligibility list certified by the Onondaga County Personnel Department to interview for the position of "Deputy Sheriff Sergeant-Custody."  (*Compare* Dkt.  No. 17, Attach. 8, ¶ 51 *with* Dkt. No. 18, Attach. 1, at ¶ 51.)  Plaintiff was subsequently interviewed by a panel of various high-ranking police officers, including Captain Brisson.  (*Compare* Dkt.  No. 17, Attach. 8, ¶ 52 *with* Dkt. No. 18, Attach. 1, at ¶ 52.) During the interview, Captain Brisson questioned Plaintiff about a Supervisor's Memorandum he had received for writing an e-mail message found to be unprofessional and offensive.  (*Compare*

Dkt. No. 17, Attach. 8, at 7, ¶ 53 *with* Dkt. No. 18, Attach. 1, at ¶ 53; Dkt. 17, Attach. 16, at 18,

¶¶ 1-12.)  The promotion panel deemed Plaintiff's response insufficient.  (*Compare* Dkt. No. 17,

Attach. 8, at ¶ 54 *with* Dkt. No. 18, Attach. 1, at ¶ 54; Dkt. 18, Attach. 8, at 17, ¶¶ 4-24 *with* Dkt.

No. 17, Attach. 8, at ¶ 65.)  The promotion panel further interpreted Plaintiff's refusal to discuss

the discipline as a sign of rigidity. (*Id.*; *compare also* Dkt.17, Attach. 8, at ¶ 65 *with* Dkt. 18,

Attach 1 at ¶ 65.)

On June 30, 2007, Jane DeMarco and Kevin Mahoney were promoted from the certified

eligibility list.  (*Compare* Dkt.17, Attach. 8, at ¶ 55 *with* Dkt. 18, Attach 1 at ¶ 55.)  Between

June 30, 2007 and May 29, 2008, five people were promoted for the position of Sergeant-

Custody.  (*Compare* Dkt.17, Attach. 8, at ¶¶ 57-63 *with* Dkt. 18, Attach 1 at ¶¶ 57-63.)

On May 29, 2008, the Onondaga County Personnel Department again certified an

eligibility list for the position of Sergeant-Custody.  (*Compare* Dkt.17, Attach. 8, at ¶ 63 *with*

Dkt. 18, Attach 1 at ¶ 63.)  Plaintiff and two other eligible candidates were offered the

opportunity to re-interview for the position.  (*Compare* Dkt. No. 17, Attach. 8, at ¶ 64 *with* Dkt.

No. 18, Attach. 1, at ¶ 64.)  One candidate, Theresa Demko, chose not to participate.  (*Compare*

Dkt. No. 17, Attach. 8, at ¶ 64 *with* Dkt. No. 18, Attach. 1, at ¶ 64.)  Jason Jarvis and Plaintiff

interviewed for the position. (*Compare* Dkt. No. 17, Attach. 8, at ¶ 64 *with* Dkt. 18, Attach.

1, at ¶ 64.)  When asked if he had anything to add from his previous interview, Plaintiff said

"no." (*Compare* Dkt. No. 17, Attach. 8, at ¶ 64 *with* Dkt. 18, Attach. 1, at ¶ 64).  The panel

perceived Plaintiff's response as an illustration of his continuing rigidity, which was a quality

that would not make him a good supervisor.  (*Compare* Dkt. No. 17, Attach. 8, at ¶ 65 *with* Dkt.

No. 18, Attach. 1, at ¶ 65.)  The panel recommended Jason Jarvis, who is thirteen years younger

than Plaintiff, for the promotion.  (*Compare* Dkt. No. 17, Attach. 8, at ¶ 66 *with* Dkt. No. 18,

Attach. 1, at ¶ 66.)

On August 20, 2008, the Onondaga County Personnel Department again certified an eligibility list for the position of Sergeant-Custody.  (*Compare* Dkt.17, Attach. 8, at ¶ 67 *with* Dkt. 18, Attach 1 at ¶ 67.)  On August 23, 2008, Mark Casselmon, who was then aged forty-eight (one year younger than was Plaintiff), was promoted.  (*Id*. at ¶¶ 66-68.)

### D.     Plaintiff's Age Discrimination Grievances

On or about October 16, 2008, Plaintiff filed a Charge of Discrimination with the EEOC, alleging age discrimination.  (*Compare* Dkt. No. 17, Attach. 8 at ¶ 73 *with* Dkt. No. 18, Attach. 1 at ¶ 73.)  On or about July 8, 2008, Plaintiff served Defendants with a Notice of Claim alleging, in part, that he had been discriminated against on the basis of age as a result of his not being promoted on June 2, 2008.  (*Id*.)  On or about November  21, 2008, Plaintiff served Defendants with a Notice of Claim, alleging, in part, that he had been discriminated against on the basis of age as a result of his not being promoted on August 23, 2008.  (*Id*.)  Plaintiff has never filed an internal discrimination, harassment or retaliation complaint with Onondaga County or the Sheriff's Office regarding his not being promoted on the basis of his age.  (*Id*.)

## IV.     ANALYSIS

As stated above in Part I.A. of this Decision and Order, Plaintiff claims that Defendants discriminated against him on the basis of his age because, on two separate occasions, Defendants passed him over for a promotion and instead promoted younger candidates.  Before turning to an analysis of Plaintiff's claims, six points bear mentioning.

First, in his Complaint, Plaintiff alleges that he was discriminated against on June 2, 2008, and August 23, 2008, when other individuals were promoted to the position of Sergeant-Custody instead of him.  The Complaint does not allege facts plausibly suggesting discrimination based on the promotion date of *February 9, 2008.*  (Dkt. No. 1.)  Nonetheless, Defendants

14

addressed the February 9, 2008, promotions in their summary judgment motion; and Plaintiff

argues in his response that one of his claims arises from his not being promoted on February 9,

2008.  However, because the date of February 9, 2008, is not mentioned in either Plaintiff's

EEOC complaint or his Complaint in this action, the Court will not consider any claims related

to this date.  The Court would add only that Plaintiff's argument in support of his claim of age

discrimination based on his not being promoted on February 9, 2008, is indistinguishable from

his arguments in support of his claims of age discrimination based on his not being promoted on

June 2, 2008, and August 23, 2008.  As a result, and for the reasons discussed below, the Court

finds that it does not (even with the utmost of special liberality) construe Plaintiff's Complaint as

asserting a claim of discrimination based on his not being promoted on February 9, 2008.

Second, as stated above in Part I.B. of this Decision and Order, Plaintiff acknowledged in

his response that (1) he is not entitled to punitive damages, (2) his ADEA claims are limited by

the statute of limitations to those promotions occurring on February 9, 2008, June 2, 2008, and

August 23, 2008, and (3) his New York State law claims are limited to the promotions occurring

on June 2, 2008, and August 23, 2008 (because those were the only promotion dates regarding

which Plaintiff filed the appropriate Notices of Claim).  As a result, the Court need not, and does

not, consider Plaintiff's claim for punitive damages or his ADEA and New York State law

claims based on promotions occurring on dates other than June 2, 2008, and August 23, 2008.

Third, as stated above in Part I.B. of this Decision and Order, Defendants argue that, to

the extent the Court liberally construes Plaintiff's interrogatories as effectively amending

Plaintiff's Complaint to assert a claim of harassment and/or hostile work environment, these

claims should nonetheless be dismissed.  However, the Court does not (even with the utmost of

special liberality) construe Plaintiff's Complaint as alleging a claim of a hostile work

environment.  For example, nowhere in his Complaint does Plaintiff allege facts plausibly suggesting that he was harassed by any of his co-workers (let alone that he was harassed because of his age, or that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment).  As a result, the Court need not, and does not, consider this claim in its analysis of Defendants' motion for summary judgment.

Fourth, as also stated above in Part I.B. of this Decision and Order, while Plaintiff provided a series of captions regarding his other claims in his response to Defendants' motion for summary judgment, he did not provide any legal or factual arguments under his captions. Instead, Plaintiff provided citations to a series of cases, some of which are relevant, and some of which are not relevant, to the captioned "Point."  Based on these captions, and the fact that Plaintiff is proceeding *pro se*, the Court declines to treat Defendants' motion as unopposed. However, the Court has trouble (even with the utmost of special liberality) inferring legal or factual arguments based on Plaintiff's mere citations to (only partially relevant) case law.

Fifth, in his response to Defendants' motion for summary judgment, Plaintiff argues that "Defendants cannot provide [him] with any documentation in the form of notes or scores regarding [his] promotion interview[s]."  (Dkt. No. 18 at 8 [attaching page "5" of Plaintiff's opposition memorandum of law].)  Plaintiff speculates that this purported inability to provide the referenced documentation is the result of "destruction of evidence."  (*Id*.)  As a result, he argues, summary judgment is not warranted.

To the extent that this is an attempt by Plaintiff to invoke Fed. R. Civ. P. 56(d) by arguing that he cannot oppose Defendants' motion because he has not been provided adequate discovery, Plaintiff has not specifically shown, by affidavit or declaration, the following: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably

expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain

them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236,

244 (2d Cir. 2004).   As a result, the Court must, and does, reject this argument.

        To the extent that this is an attempt by Plaintiff to request sanctions due to spoliation, in

order to succeed on a spoliation claim, a plaintiff must establish that (1) the defendant was under

an obligation to preserve the evidence, (2) the evidence was destroyed with a culpable state of

mind, and (3) the evidence destroyed was relevant to the plaintiff's claim or defense.  *DeMeo v.*

*Kean*, 754 F. Supp.2d 435, 447 (N.D.N.Y. 2010) (Hurd, J.).  Plaintiff makes no attempt to

address any of these elements.  Moreover, Plaintiff fails to explain the nexus between the

interview scores and age discrimination.  For example, Plaintiff has adduced no admissible

record evidence that would even suggest (let alone establish) that the interviewers scored him

highly during his interview, but nonetheless refused to recommend him for promotion.  In fact,

Plaintiff testified during his deposition that he never asked any questions about his scores or his

interview performance.  (Dkt. No. 18, Attach. 11, at 40.)  In addition, two members of the

interviewing panel stated that Plaintiff's interview scores were too low to be recommended for

promotion because his answers were short, odd and inappropriate, and he later declined to

actively participate in a review of his interview to prepare for a future round of promotions.

(Dkt. No. 17, Attach 5; Dkt. No. 17, Attach 6.)  For these reasons, the Court must, and does,

reject this argument.

        Sixth, Plaintiff has sued Defendant Walsh only in his official capacity.  As a result, the

Court need not, and does not, address Plaintiff's claims against Defendant Walsh in his

individual capacity.

**A.    Plaintiff's Age Discrimination Claims Against Defendant Walsh**

"Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978).  "To succeed on a claim against a municipal officer in [his] official capacity, the plaintiff 'must still show that a [municipal] custom, policy or practice was the moving force behind the alleged constitutional violations.'" *Carmody v. Village of Rockville Centre*, 661 F. Supp.2d 299, 329 (E.D.N.Y. 2009) (quoting *Escobar v. City of New York*, 05-CV-3030, 2007 WL 1827414, at *3 [E.D.N.Y. June 24, 2007]).  "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'" *Dejean v. Cnty. of Nassau*, 06-CV-6317, 2008 WL 111187, at *5 (E.D.N.Y. Jan. 8, 2008) (quoting *Escobar,* 2007 WL 1827414).

Here, Plaintiff's claims against Defendant Walsh are "merely duplicative of the action against the [County]." *Escobar*, 2007 WL 1827414, at *3.  As a result, Plaintiff's claims against Defendant Walsh in his official capacity are dismissed as duplicative of his claims against the County.  *See Carmody*, 661 F. Supp.2d at 329.

**B.    Plaintiff's Age Discrimination Claims Against Onondaga County**

**1.    Plaintiff's Age Discrimination Claim Under the ADEA**

Until recently, courts applied the same standard used in Title VII cases to ADEA cases, known as the *McDonnell Douglas* test.  Under the *McDonnell Douglas* test the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the plaintiff establishes a prima facie case of discrimination,

18

the burden then shifts to the defendant to articulate "some legitimate, nondiscriminatory reason"

for the action.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  Once such a reason is provided, the

plaintiff can no longer rely on his prima facie case.  Rather, he may only prevail if he can show

that the employer's "stated reason for . . . rejection was in fact pretext."  *Id*. at 804; *Holcomb v.*

*Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

In the recent case of *Gross v. FBL Fin. Servs., Inc.*, the United States Supreme Court

distinguished Title VII and ADEA claims in the context of mixed-motive analysis, holding that

"a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a

preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse

employment action" and not just a contributing or motivating factor.  *Gross v. FBL Fin. Servs.,*

*Inc.*, 129 S. Ct. 2343, 2352 (2009).  However, "*Gross* did not . . . reject the *McDonnell Douglas*

burden-shifting framework for ADEA cases altogether."  *Gorzynski v. Jetblue Airways Corp.,*

596 F.3d 93, 106 (2d Cir. 2010).  "Instead, it left that issue open, noting only that the Supreme

Court 'has not definitively decided whether the evidentiary framework of *McDonnell Douglas*

. . . is appropriate in the ADEA context.'"  *Gorzynski,* 596 F.3d at 106 (quoting *Gross*, 129 S. Ct.

2349 n.2).  Accordingly, as the Second Circuit noted in *Gorzynski*, this court "remain[s] bound

by . . . the burden-shifting framework for ADEA cases that has been consistently employed in

our Circuit[,]" i.e., the *McDonnell Douglas* burden-shifting framework.  *Id*.

Here, Plaintiff has made out a prima facie case of age discrimination with regard to his

not being promoted on June 2, 2008.  At age forty-nine at the time of not being promoted on

June 2, 2008, he is within the protected class.  29 U.S.C. § 631(a).  He was also qualified for the

position for which he applied, having been selected from the certified eligibility list.  Plaintiff

did not receive the promotion he sought, and the fact that the position went to someone thirteen

19

years younger raises an inference of discrimination.  *See Tarshis v. Riese Org.*, 211 F.3d 30, 38 (2d Cir. 2000) (finding that the replacement of the plaintiff by someone eight years younger raised an inference of age discrimination), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *Ranieri v. Highland Falls-Fort Montgomery Sch. Dist.*, 198 F. Supp.2d 542, 544 (S.D.N.Y. 2002) (holding the fourth element satisfied where plaintiff was replaced by someone ten years younger).

However, Defendants have articulated a legitimate, non-discriminatory reason for not selecting Plaintiff for a promotion.  More specifically, Defendants have adduced admissible record evidence establishing that, in the opinion of the promotion panel, Plaintiff was curt and gave rigid responses during his interviews, demonstrating to the panel that, in their opinion, he lacked the communication skills necessary to be an effective supervisor.  *See Raskin v. Wyatt Co.*, 125 F.3d 55, 64 (2d Cir. 1997) (affirming district court's finding that employer articulated legitimate, non-discriminatory reason for not promoting plaintiff based on record evidence of "numerous interviews show[ing] that Wyatt employees had serious problems with [plaintiff], for reasons having nothing to do with his age[,]" with one employee referring to plaintiff as "abrasive, unlikable, arrogant, and disruptive," another referring to him as "abrasive," "undiplomatic," and "divisive," and a third referring to him as "non-collegial, confrontational[,] and obstructionist"); *Pasha v. William M. Mercer Consulting, Inc.*, 00-CV-8362, 2004 WL 188077, at *7-8 (S.D.N.Y. Feb. 2, 2004) (finding that unanimous belief by seven interviewers that plaintiff's skill set, experience, and personality did not make him a good candidate for position were non-discriminatory reasons for their decision not to hire him).

Moreover, Plaintiff has failed to adduce record evidence that would even suggest (let alone establish) that Defendants' reason for not promoting Plaintiff was pretextual.[11]

In addition, with regard to his not being promoted on August 23, 2008, Plaintiff has not made out a prima facie case of discrimination.  This is because the individual who was promoted, was only one year younger than Plaintiff (and also a member of the same protected age class).  *Woodman v. WWOR-TV, Inc*., 411 F.3d 69, 78 (2d Cir. 2005) ("[A] 40-year old is unquestionably a member of the ADEA protected class, but if that person is discharged and replaced by a 39-year old, the 1-year age discrepancy, without more, will not likely support an inference of discriminatory intent."); *Hoffmann v. PRIMEDIA Special Interest Publs*., 217 F.3d 522, 525 (7th Cir. 2000) (holding 3-year age difference between discharged 42-year-old employee and 39-year-old replacement "fails the fourth requirement of a McDonnell Douglas showing under the ADEA").

The Court would add only that, even assuming Plaintiff had made out a prima facie case of discrimination, his discrimination claim would nonetheless be dismissed for the same reasons that the Court dismissed his discrimination claim based on his not being promoted on June 2, 2008 (i.e., Defendants have offered a legitimate non-discriminatory reason for not promoting Plaintiff and Plaintiff has failed to adduce any record evidence even suggesting pretext).

For these reasons, Plaintiff's age discrimination claim under the ADEA is dismissed.

---

[11]     Because Defendants have articulated a non-discriminatory reason for not promoting Plaintiff, which Plaintiff has failed to establish was pretextual, Plaintiff has similarly failed to establish that age was the "but-for" cause of his not being promoted.

      **2.**     **Plaintiff's Age Discrimination Claim Under N.Y. Exec. Law § 290**

While the Supreme Court has clearly distinguished Title VII cases from ADEA cases in the context of mixed motive analysis, "[i]t is unclear whether the Supreme Court's holding in *Gross* extends to age discrimination claims brought pursuant to the New York Human Rights Law." *Stouter v Smithtown Cent. Sch. Dist.*, 687 F. Supp.2d 224, 234 n.9 (E.D.N.Y. 2010); *Weiss v. JP Morgan Chase & Co.*, 06-CV-4402, 2010 WL 114248, at *2 (S.D.N.Y. Jan. 13, 2010). However, federal courts continue to apply the *McDonnell Douglas* test to age discrimination claims under N.Y. Exec. Law § 290. *See Bronzini v. Classic Sec. L.L.C.*, 09-CV-0996, 2010 WL 1193489, at *1 (2d Cir. Apr. 6, 2010) (affirming application by district court).

As a result, and for the reasons set forth in Part IV.B.1. of this Decision and Order, Plaintiff's state-law age discrimination claim is dismissed.

    **C.**     **Plaintiff's Claim Under 42 U.S.C. § 1983**

Plaintiff asserts his claim under 42 U.S.C. § 1983 against only Defendant Walsh. For the reasons set forth above in Part IV.A. of this Decision and Order, this claim is dismissed. The Court would add only that, had Plaintiff brought this claim against the County, it would be dismissed for the same reasons that Plaintiff's ADEA claim was dismissed. *See Nance v. City of New York*, 09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) ("Equal protection claims for age discrimination under § 1983 are analyzed following the same standards as claims made pursuant to ADEA."), *accord*, *Shapiro v. New York City Dept. of Educ.*, 561 F. Supp.2d 413, 422 n.2 (S.D.N.Y. 2008); *Sorlucco v. New York City Police Dept.*, 888 F.2d 4, 7 (2d Cir. 1989) (holding that *McDonnell Douglas* burden-shifting analysis applies to a claim under 42 U.S.C. § 1983).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 17) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety.

Dated: September 14, 2011
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

23